IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Melanie M. Pendarvis,   )   | C/A No. 0:13-487-RMG-PJG |
| )   | |
| Plaintiff,   )   | |
| )   | |
| v.   )   | **REPORT AND RECOMMENDATION** |
| )   | |
| Carolyn W. Colvin, Acting Commissioner )   | |
| of Social Security,[1]   )   | |
| )   | |
| Defendant.   )   | |
| _____)   | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Melanie M. Pendarvis ("Pendarvis"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that this matter should be remanded for further consideration as explained below.

**ADMINISTRATIVE PROCEEDINGS**

In August 2010, Pendarvis applied for DIB, alleging disability beginning July 11, 2009. Pendarvis's application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on November 8, 2011, at which Pendarvis, who was represented by Robertson H. Wendt, Jr., Esquire, appeared and testified. After

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.



hearing testimony from a vocational expert, the ALJ issued a decision on November 18, 2011 finding that Pendarvis was not disabled. (Tr. 19-28.)

Pendarvis was forty-five years old on her alleged disability onset date. (Tr. 116.) She has a college education and past relevant work experience as a sales administration assistant at a cement plant. (Tr. 144.) Pendarvis alleged disability since July 11, 2009 due to severe depression and anxiety, obsessive-compulsive disorder, general anxiety disorder, anxiety/panic attacks, menopausal insomnia, extreme fatigue, shortness of breath, and chest pains during an attack. (Tr. 116, 143.)

The ALJ found as follows:

1.  The claimant last met the insured status requirements of the Social Security Act through December 31, 2015.

2.  The claimant has not engaged in substantial gainful activity since July 11, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: obsessive-compulsive disorder; depression; and anxiety (20 CFR 404.1520(c)).
    \* \* \*

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 20 CFR 404.1525 and 404.1526).
    \* \* \*

5.  . . . [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple routine repetitive tasks with no ongoing interaction with the public.
    \* \* \*

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).
    \* \* \*

7.  The claimant was born . . . [in] 1963, and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 11, 2009, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 21-28.) Pendarvis submitted additional evidence to the Appeals Council, which denied her request for review on January 17, 2013, making the decision of the ALJ the final action of the Commissioner. (Tr. 2-5.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;



(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).



v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

## ISSUES

Pendarvis raises the following issues for this judicial review:

I. The ALJ's Finding That Pendarvis' Mental Impairments Did Not Meet a Listed Impairment At Step Three of the Sequential Evaluation Was Reached Through Legal Error and Was Not Supported By Substantial Evidence.

II. The ALJ's RFC Assessment and His Rejection of Dr. Funsch's Treating Physician Opinions Were Reached Through Legal Error and Were Not Supported By Substantial Evidence.

III. The Court Should Reverse the Commissioner Outright and Award Benefits Rather Than Remand.

(Pl.'s Br., ECF No. 9.)

## DISCUSSION

Pendarvis presents several issues on appeal.  For the reasons that follow, the court agrees that remand is warranted based on the ALJ's analysis of Dr. David J. Funsch's opinions.  Specifically, based on a review of the record and the ALJ's decision, the court cannot say that the ALJ's decision to give little weight to Dr. Funsch's opinions is supported by substantial evidence, and this decision impacts several steps of the sequential process, including the Listings analysis.  Therefore, the court addresses this issue first.



Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

> Additionally, SSR 96-2p provides that
>
> a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the



evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id., at *5.

The record reveals that Dr. Funsch, Pendarvis's treating psychiatrist, began treating Pendarvis in February 2005 and issued several opinions regarding Pendarvis's limitations. On March 7, 2011, Dr. Funsch issued a letter summarizing Pendarvis's condition and its limiting effects, as well as her history of medications. Dr. Funsch indicated that Pendarvis left her job a second time[3] in July 2009 due to increasing depressive and anxiety symptoms and did not return. She was later terminated from her job in February 2010 after twenty-three years of service. Dr. Funsch's letter also included the following assessments:

> Despite no longer being exposed to her stressful work environment, Ms. Pendarvis has continued to have ongoing depressive and anxiety symptoms. Ms. Pendarvis has had trials of numerous psychotropic medications over the past few years. . . . Currently Ms. Pendarvis remains severely depressed. She has frequent crying episodes. She has significant anhedonia and fatigue. She has trouble motivating herself to do things. Some days she stays in bed all day. She has never had suicidal thoughts but does endorse feelings of hopelessness and worthlessness. Ms. Pendarvis has significant anxiety throughout the day. She tends to be anxious around people but also stays anxious at home. She tends to worry obsessively about her current problems and about her future. She has had no full blown panic attacks over the past several months. She continues to have significant Obsessive Compulsive Disorder symptoms including compulsive checking, compulsive counting, and compulsive hoarding. She has had severe insomnia over the past year despite multiple medications to help with her sleep. Ms. Pendarvis has reported in recent months that she neglects to bath[e] or dress on some days. She has trouble keeping up with household chores. Ms. Pendarvis has been increasingly tearful and emotionally fragile during recent appointments with me.

---

[3] Pendarvis previously reported to Dr. Funsch that she left work in July 2004 due to problems with depression and anxiety and remained on short-term disability until October 2004 when she returned to work.

Page 7 of 15



(Tr. 354.)  Dr. Funsch's diagnoses included Generalized Anxiety Disorder; Major Depression, Recurrent, Severe; Panic Disorder without Agoraphobia; Obsessive Compulsive Disorder, and he assessed her current GAF as 50.[4]  Finally, Dr. Funsch opined that

> [d]espite being removed from her stressful work environment, Ms. Pendarvis has continued to have severe impairment related to her psychiatric conditions. I feel Ms. Pendarvis is incapable of maintaining steady employment of any kind at this time. Her conditions are chronic in nature and will require ongoing, long term treatment. I feel Ms. Pendarvis will be unable to return to full time employment in the foreseeable future. I fully support her attempts to obtain Social Security Disability benefits.

(Id.) On March 25, 2011, Dr. Funsch completed a mental status form listing the same diagnoses from his letter and indicating that Pendarvis suffered from serious work-related limitations in function due to her mental condition. (Tr. 365.) On October 13, 2011, Dr. Funsch completed a form entitled Treating Psychiatrist's Statement and a form entitled Mental Residual Functional Capacity Assessment. In the Treating Psychiatrist's Statement, Dr. Funsch opined that Pendarvis had a current GAF of 48 and her highest GAF over the past year was 50. Dr. Funsch further indicated limitations that would satisfy the A, B, and C criteria of Listing 12.04, Affective Disorders, as well as the A and B criteria for Listing 12.06, Anxiety Disorders. (See Tr. 405-10.) In the Mental Residual Functional Capacity Assessment, Dr. Funsch indicated that Pendarvis was markedly limited in her ability to maintain attention and concentration for extended periods; to perform activities within a schedule,

---

[4] The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, fourth edition ("DSM-IV"), contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning. A GAF score may reflect the severity of symptoms or impairment in functioning at the time of the evaluation. Id. at 32-33. According to the DSM-IV, a GAF score between 41 and 50 may reflect "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Id. at 34. However, the court observes that the fifth edition of the DSM, published in 2013, has discontinued use of the GAF. American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, 16 (5th ed. 2013) ("DSM-V").

PJG

maintain regular attendance, and be punctual within customary tolerance; to sustain an ordinary routine without special supervision; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; and to accept instruction and respond appropriately to criticism from supervisors. Dr. Funsch indicated Pendarvis was only moderately limited in her ability to understand, remember, and carry out detailed instruction and to respond appropriately to changes in the work setting. (Tr. 411-12.) In support of this opinion, Dr. Funsch referenced his March 2011 letter.

The ALJ found that Dr. Funsch's opinions were entitled to little weight. In reaching this conclusion, the ALJ first selectively summarized these opinions and then stated

> [t]he medical evidence of record, as a whole, along with the claimant's self reported activities of daily living, do not support Dr. Funsch's opinion that the claimant has moderate restrictions in activities of daily living. As discussed above, the claimant's activities of daily living include caring for herself, her parents, driving a car, running errands, shopping, working out at a gym, and traveling on vacations with her husband. Dr. Funsch's opinion that the claimant has marked difficulty in maintaining social function is wholly inconsistent with repeated reports in his treatment records and Ms. McNeil's records, and the claimant's testimony, that she enjoys being around her friends and family, and although she has difficulty with crowds, she maintains many personal relationships with her family and friends. Dr. Funsch's opinion that the claimant has marked difficulty with concentration[,] persistence and pace is also unsupported by the evidence, as the claimant reports she enjoys doing puzzles, going to the movies, watching soap operas, baking, and is capable of assisting her mother with medications, sitting and other services on a regular basis. Dr. Funsch's opinion that the claimant has suffered 4 or more episodes of decompensation is not explained or supported by the record, as episodes of decompensation are exhibited by an exacerbation in symptoms or signs that would ordinarily require increased treatment of a less stressful situation (or a combination of the two), with each episode last[ing] at least two weeks. Since the claimant completed her outpatient program in fall of 2010, the claimant's treatment regime has been consistent with only minor adjustments to the claimant's drug therapy to prevent the claimant's weight gain and to balance her insomnia. (Exhibit 12F) Dr. Funsch's numerous opinions as stated have been considered, but due to the inconsistencies with the evidence as a whole, and the above stated reasoning, I accord



little weight to Dr. Funsch and conclude that although the claimant's mental health problems cause some limitations, the limitations are not as severe as opined by Dr. Funsch and have been adequately accounted for in the above stated residual functional capacity.

(Tr. 26.)

Following the ALJ's decision, Pendarvis submitted additional evidence to the Appeals Council. Specifically, by letter dated January 9, 2012, Dr. Funsch stated the following:

> Ms. Pendarvis had several extended periods of medical leave due to severe depressive, anxiety, and Obsessive Compulsive disorder symptoms prior to being terminated from her job in September 2009. Since being terminated from her job, Ms. Pendarvis has continued to have severe impairment related to her psychiatric condition. She has had periods of improved level of functioning and decreased psychiatric symptoms, but she has also had repeated periods of decompenstion with more severe impairment. As part of her treatment, Ms. Pendarvis has been encouraged to remain as active as possible outside of her home. She has pushed herself to remain connected with family and a few friends, but overall her social interaction has been significantly reduced from previous levels. She has been committed to exercising at Curves as part of her overall treatment plan.
>      Ms. Pendarvis has significant anxiety when around large numbers of people. This would cause marked impairment in most occupational settings. Her ability to concentrate and persist at tasks is also markedly impaired. I do not feel that watching soap operas or occasionally doing puzzle books equates at all to the demands required in this area with any full time job. Ms. Pendarvis' obsessive compulsive perfectionism repeatedly prevented her from performing job related tasks in a timely manner prior to termination from her job in September 2009.
>      In summary, Ms. Pendarvis has had some periods of marginal improvement in her psychiatric symptoms, however she has been unable to maintain a consistent improvement in her psychiatric symptoms. I feel that exposure to routine stresses related to any occupational setting would cause an exacerbation of Ms. Pendarvis' already severe psychiatric symptoms. I do not feel that she is capable of maintaining steady employment in any occupational setting.

(Tr. 422.) Additionally, by letter dated December 26, 2011, Ruthie Miller McNeil, M.Ed., LPC, Pendarvis's treating psychotherapist, stated that she could not support a finding that Pendarvis could perform simple and repetitive tasks with no ongoing interaction with the public. Specifically, McNeil opined that



> Mrs. Pendarvis may be able to perform simple and repetitive tasks with no ongoing interaction with the public *but only on an intermittent basis*. Her condition has not stabilized enough during the past two years to allow a predictable and consistent state of being which would permit regular, routine work. Mrs. Pendarvis optimistically made an effort to work a sales job in October, 2008 and volunteered at an Adult Education Center in November 2010 with both of these ending in early termination as a result of her inability to maintain emotional stability necessary for long-term service.

(Tr. 417) (emphasis in original). McNeil also indicated that while Pendarvis appeared to improve in January 2010, within a few months her crying spells, hopelessness, and anxiety returned. McNeil opined that "Pendarvis does not seem to be able at this time to maintain enough stability in mood to be regularly dependable for any full-time position." (Tr. 418.) After discussing the importance of social activity and exercise, McNeil stated that Pendarvis's "social life and exercise were important to [her] progress, and on many occasions presented a struggle for her in that they were accompanied by symptoms of depression and panic." (Id.) Finally, although McNeil stated that she is hopeful that one day Pendarvis may progress to a more stable existence and discussed Pendarvis's demonstration of determination based on her involvement in various treatments, McNeil opined that "Pendarvis has been actively involved in her treatment and is still wracked by unwanted and unpredictable mood swings as well as fluctuating anxiety levels which leave her with an inability to perform satisfactorily in her work." (Tr. 419.)

    The Appeals Council made the additional evidence part of the record and considered it but determined that the information did not provide a basis for changing the ALJ's decision. (Tr. 1-2, 5.)

    Pendarvis challenges each of the reasons offered by the ALJ in giving Dr. Funsch's opinions little weight, arguing that the ALJ's decision is not supported by substantial evidence and does not comply with applicable law. As part of her arguments, Pendarvis points to additional evidence



submitted to the Appeals Council, which Pendarvis argues refutes some of the reasons offered by the ALJ in giving Dr. Funsch's opinions little weight.

Upon review of the record and the parties' briefs, the court is unable to determine whether the ALJ's decision is supported by substantial evidence and finds that the ALJ's decision appears to be controlled by an error of law. As argued by Pendarvis and discussed above, in the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). However, the court finds that the ALJ has not identified persuasive contrary evidence rebutting Dr. Funsch's opinions. Further, in this case the ALJ gave greater weight to the opinions of the non-examining state agency sources when they did not have the benefit of subsequent opinions from Dr. Funsch. While under certain circumstances the opinion of a non-examining source may be afforded greater weight than the opinion of a treating source, the court finds that those circumstances do not exist in this case. See SSR 96-6p, 1996 WL 374180, at *3. Also in support of remand for further consideration is the fact that the court cannot determine whether, in light of the additional evidence submitted, the Commissioner's decision is supported by substantial evidence. See Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir. 2011) (reversing and remanding the Commissioner's decision because upon considering the whole record, including the new evidence submitted to the Appeals Council, the court could not determine whether substantial evidence supported the ALJ's denial of benefits). Although "[t]he Appeals Council need not explain its reasoning when denying review of an ALJ decision," Meyer, 662 F.3d at 702, as pointed out by Pendarvis, the additional evidence appears to address some of the reasons offered by the ALJ in discounting Dr. Funsch's opinions, and the court

finds that this additional evidence raises a question as to whether the ALJ's decision is supported by substantial evidence.

Accordingly, based on the record before the court, the court finds that rather than remanding for an award of benefits, this matter should be remanded for further explanation and review of Dr. Funsch's opinions and to continue with evaluation of Pendarvis's disability application, if necessary.[5] See, e.g., Radford v. Colvin, 734 F.3d 288, 294-95 (4th Cir. 2013) ("Although we hold that the district court did not apply the wrong legal standard, we nonetheless vacate its judgment because it chose the wrong remedy: Rather than 'reversing' the ALJ and remanding with instructions to award benefits to Radford, the district court should have vacated and remanded with instructions for the ALJ to clarify why Radford did not satisfy Listing 1.04A."); see also Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000) (noting that when the court finds the Commissioner's denial of benefits to be improper, the court's "abundant deference to the ALJ" cautions in favor of remand, and entering an immediate finding of disability is appropriate only if the record "overwhelmingly supports" such a finding); Timmerman v. Comm'r of Soc. Sec., C/A No. 2:07-3745-HFF-RSC, 2009 WL 500604 (D.S.C. Feb. 26, 2009) (observing that factors in deciding whether to remand for consideration of additional evidence or for an award of benefits include: that deference cautions in favor of remand, plaintiff's court submissions include requests that this matter be remanded, and when evidence in the record does not overwhelmingly support a finding of disability). Furthermore, in light of the court's recommendation that this matter be remanded for further consideration, the court need not address Pendarvis's remaining issues, as they may be

---

[5] The court expresses no opinion as to whether further consideration the evidence by the ALJ should lead to a finding that Dr. Funsch's opinions are entitled to controlling weight. Further analysis and discussion may well not affect the ALJ's conclusion on this point.



rendered moot on remand. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Moreover, if necessary, Pendarvis may present her remaining arguments on remand.

## RECOMMENDATION

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above.

                                                                                       _____
                                                                                       Paige J. Gossett
                                                                                       UNITED STATES MAGISTRATE JUDGE

June 9, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).