# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Melanie M. Pendarvis, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 0:13-487-RMG |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff has brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on June 9, 2014, recommending that the Commissioner's decision be reversed and remanded. (Dkt. No. 18). The Commissioner advised the Court that she would not file objections to the R & R. (Dkt. No. 20). In order to provide the Commissioner adequate legal guidance in addressing this claim on remand, the Court has fully addressed below the issues raised in this appeal.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is

made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1527(b). This includes the duty to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be

-2-

obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996). Further, the Commissioner is obligated to consider information provided by other professional health care providers not technically falling within the Social Security definition of an "acceptable medical source", such as therapists, who may be able to provide "valuable functional information" concerning the claimant's condition. 20 C.F.R. § 404.1513(a),(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(1)(c).

A claimant may offer relevant evidence to support his or her disability claim throughout the administrative process. Even after the Administrative Law Judge ("ALJ") renders a decision, a claimant who has sought review from the Appeals Council may submit new and material evidence to the Appeals Council as part of the process for requesting review of an adverse ALJ decision. 20 C.F.R. §§ 404.968, 404.970(b). The new evidence offered to the Appeals Council is then made part of the record. The Social Security Regulations do not require the Appeals

Council expressly to weigh the newly produced evidence and reconcile it with previously produced conflicting evidence before the ALJ. Instead, the regulations require only that the Appeals Council make a decision whether to review the case, and, if it chooses not to grant review, there is no express requirement that the Appeals Council weigh and reconcile the newly produced evidence. *Meyer v. Astrue*, 662 F.3d 700, 705-06 (4th Cir. 2011).

As the Fourth Circuit addressed in *Meyer*, the difficulty arises under this regulatory scheme on review by the courts where the newly produced evidence is made part of the record for purposes of substantial evidence review but the evidence has not been weighed by the fact finder or reconciled with other relevant evidence. *Meyer* held that as long as the newly presented evidence is uncontroverted in the record or all the evidence is "one-sided," a reviewing court has no difficulty determining whether there is substantial evidence to support the Commissioner's decision. *Id.* at 707. However, where the "other record evidence credited by the ALJ conflicts with the new evidence," there is a need to remand the matter to the fact finder to "reconcile that [new] evidence with the conflicting and supporting evidence in the record." *Id.* Remand is necessary because "[a]ssessing the probative value of the competing evidence is quintessentially the role of the fact finder." *Id.*

### Factual Background

Plaintiff's claim of disability is based upon a long history of psychiatric disorders that apparently date in part from her childhood and have, according to Plaintiff and her treating health care providers, worsened over the last decade. There is little dispute in the record that Plaintiff suffers from multiple severe psychiatric conditions, including obsessive compulsive disorder, recurrent depression, and anxiety disorder. Tr. 21, 333, 354, 377, 380, 405. There is also no

dispute that Plaintiff left her position with an employer in July 2009 because of her inability to function because of limitations imposed by her psychiatric conditions and has not returned to full time employment since that time. Tr. 21, 24, 331, 354. The record also establishes that since leaving employment Plaintiff has experienced persistent symptoms of depression, anxiety, and obsessive compulsive disorder, with those symptoms periodically exacerbated by stressors in Plaintiff's life. During such periods of exacerbation of symptoms, Plaintiff has isolated herself in her home, frequently spending major portions of the day crying and in bed. Tr. 241, 322, 328, 329, 331-32, 362, 368-69, 372. On other days, Plaintiff's condition has been documented as more stable and she has been able during those periods of relative stability to assist in the care of her elderly parents, drive a car, go on a cruise with her family, and work out in a local gym. Tr. 237, 243, 319, 361, 395.

Plaintiff has been under the care of a board certified psychiatrist, Dr. David Funsch, since 2005. Tr. 353. According to Dr. Funsch's treatment notes in the record, which date from July 2008 through September 2011, he saw Plaintiff on nearly three-dozen occasions and actively managed her complicated psychiatric condition. In a letter dated March 7, 2011, Dr. Funsch addressed in detail Plaintiff's condition since leaving her prior employment. He observed that "[d]espite no longer being exposed to her stressful work environment," she "continued to have ongoing depressive and anxiety symptoms." Tr. 354. He observed that she currently "remains severely depressed" with frequent crying episodes, anhedonia, and fatigue. *Id.* He also noted her "significant anxiety throughout the day" and her obsessive compulsive disorder symptoms, which included "compulsive checking, compulsive counting and compulsive hoarding." *Id.* Dr. Funsch concluded that Plaintiff was "incapable of maintaining steady employment of any kind at this

time." *Id.* He also completed other surveys and questionnaires during this same time period confirming his opinion that Plaintiff's psychiatric condition prevented her from performing full time employment. Tr. 365, 404-10.

Plaintiff was also under the care of a licensed professional counselor, Ms. Ruthie Miller McNeill, and the record contains detailed treatment notes from July 2008 through September 2011. These records document Plaintiff's struggles over fifty-plus office visits and confirm Dr. Funsch's documentation about Plaintiff's persistent difficulties with depression, anxiety, and obsessive compulsive disorder, exacerbated by stressors in her life that periodically sent her to bed tearful and withdrawn. Tr. 302-29, 367-72, 401-03.

Plaintiff was examined on December 22, 2010, by a consulting psychologist, Dr. James H. Way, on a referral from the Social Security Administration. Dr. Way documented that Plaintiff "[c]urrently . . . experiences anxiety throughout the day" and "sadness and crying episodes on a daily basis." Tr. 331. He documented her difficulties with her obsessive compulsive disorder, noting constant checking of the stove, faucet, and doors and frequent counting of people, chairs, ceiling tiles, and cars. *Id.* Dr. Way observed that Plaintiff was "very easily tearful and . . . overwhelmed" and was in "a fairly fragile emotional state." Tr. 332. He documented that Plaintiff's intellectual skills were intact but "her functional capacity is currently severely impaired in all life areas secondary to the significant psychiatric symptoms" and "her social functioning is currently limited." *Id.* Dr. Way diagnosed Plaintiff with obsessive compulsive disorder, moderate to severe depression, and anxiety disorder and opined that she would have "sporadic" problems with concentration and "ability to persist" due to her psychiatric difficulties. Tr. 332-33. Dr. Way offered no opinions concerning whether Plaintiff could

maintain full time employment or the estimated frequency of her "sporadic" exacerbations of symptoms.

The record also contains reports from two psychologists who reviewed Plaintiff's medical records but did not examine or treat the claimant. In one report, prepared by Kimberlie Brown, Ph.D. on January 5, 2011, Plaintiff was recognized to have various psychiatric disorders, including depression, anxiety disorder, and obsessive compulsive disorder, but the reviewer felt that none of these conditions posed more than mild or moderate limitations on the claimant or prevented her from the performance of "simple, repetitive work tasks in a setting that does not require on-going interaction with the public." Tr. 335-51. Another psychologist, Lisa Clausen, Ph.D., reached nearly the identical conclusion in an April 11, 2011 report. Tr. 373-89. Both of the chart reviewers noted the potential "sporadic" problems Plaintiff might encounter at work in functioning due to her psychiatric conditions but neither offered opinions regarding the frequency or extent of such exacerbations in her symptoms. Tr. 347, 375.

A vocational expert, Dr. Arthur Schmitt, was called to testify at Plaintiff's Social Security administrative hearing on November 8, 2011. In response to a hypothetical question from the ALJ, Dr. Schmitt indicated that there were significant jobs in the national economy for Plaintiff to perform that were limited to "simple routine repetitive concept tasks, with no ongoing interaction with the public." Tr. 51. Dr. Schmitt acknowledged, however, that no jobs existed in significant numbers for Plaintiff in the national economy if she experienced "difficulties with concentration" one to two hours per workday or was absent because of her psychiatric impairments more than two days per month. Tr. 52, 53.

Based upon this record, the ALJ found that Plaintiff retained the residual functional

capacity to perform the full range of work at all exertional levels limited only to simple routine repetitive tasks with no ongoing interaction with the public. Tr. 22. In reaching this conclusion, the ALJ gave "little weight" to the opinions of Plaintiff's long standing treating board certified physician, Dr. Funsch. The ALJ found that the "medical evidence of record, as a whole" did not support Dr. Funsch's opinions about Plaintiff's functional limitations, noting her ability to go to the movies, watch TV, do puzzles, bake, and assist her mother with her medications. Tr. 25-26. He further gave "significant weight" to the opinions of Dr. Way, the consulting examiner, and to the chart reviewers, although he did not identify the chart reviewers by name or provide any basis in the record to support the opinions of the examining consultant or chart reviewers. Tr. 26.

Plaintiff thereafter sought review by the Appeals Council and submitted two new medical reports from her treating physician, Dr. Funsch, and her therapist, Ms. McNeill. Dr. Funsch addressed directly the ALJ's finding that Plaintiff's performance of certain activities of daily living established her ability to perform full time work, noting that the record demonstrated that "she has been unable to maintain a consistent improvement in her psychiatric symptoms" and that "exposure to routine stresses related to any occupational setting would cause an exacerbation of [Plaintiff's] already severe psychiatric symptoms." Tr. 422. Ms. McNeill also challenged the finding that Plaintiff could perform certain "simple and repetitive tasks" on a full time basis, stating that the claimant "is presently unable to maintain a level of functioning needed for the consistency required in regular full time employment." Tr. 417.

The Appeals Council acknowledged receipt of the new opinion letters of Dr. Funsch and Ms. McNeill and incorporated them into the record. Tr. 5. The Appeals Council declined to review the case and stated that the new records "do[] not provide a basis for changing the

-8-

Administrative Law Judge's decision." Tr. 1-3. In reaching that decision, no fact finder assessed the new and material information provided by Dr. Funsch and Ms. McNeill to the Appeals Council or attempted to reconcile it with other opinions credited and discredited by the ALJ.

## Discussion

The ALJ's decision, dismissing the opinions of Plaintiff's long serving, board certified specialist physician and relying on the unsupported conclusions of chart reviewers that Plaintiff retained the capacity to perform "simple, repetitive work," raises obvious "red flags" to this Court. *Radford v. Colvin*, 734 F.3d 288, 295-96 (4th Cir. 2013). When this lengthy and relatively complicated record is sorted out, it is clear that the dispute is not over whether Plaintiff has multiple and severe psychiatric illnesses (all parties concede that she does), but whether her periods of exacerbation of symptoms would likely be of sufficient significance or frequency that Plaintiff could not sustain full time work. Plaintiff's treating providers, Dr. Funsch and Ms. McNeill, believe that Plaintiff's chronic psychiatric disorders and the stressors associated with work render Plaintiff incapable of the sustained effort necessary to perform full time work, and the chart reviewers contend that she could perform certain jobs requiring simple and repetitive work despite these acknowledged psychiatric problems. The examining consultant, Dr. Way, has offered no opinion on this issue.

Social Security regulations address the method for evaluating mental impairments, noting that it involves "a complex and highly individualized process" that requires the Commissioner to "consider issues and all relevant evidence to obtain a longitudinal picture" of the claimant's "overall degree of functional limitation." 20 C.F.R. § 404.1520a(c)(1). The regulations require the Commissioner to consider "any episodic limitations" and whether the claimant's mental

impairments affect her ability to function "on a sustained basis." *Id.* § 404.1520a(c)(2).

In assessing the opinions offered by various treaters, examiners, and chart reviewers, Social Security regulations, known commonly as the Treating Physician Rule, set up a clear hierarchy for the weight given to the opinions of various experts. At the top of the hierarchy sits the treating physician, whose opinions are weighed on such factors as examining relationship, treatment relationship, supportability of the opinions in the record, consistency, and whether the treating physician is a specialist. 20 C.F.R. § 404.1527(c). The opinions of chart reviewers are at the bottom rung of credited opinions of acceptable medical sources and must be evaluated against the same standards for evaluating the opinions of treating physicians. *Id.* § 404.1527(e)(2)(ii). Since the chart reviewers have neither treated nor examined the claimant, "non-examining physicians . . . are typically afforded less weight than those by . . . treating physicians." *Radford*, 734 F.3d at 296.

Measured by these standards, the ALJ's evaluation of the opinions of Dr. Funsch and the chart reviewers are clearly deficient. First, there is no evidence that the ALJ evaluated the respective opinions of Dr. Funsch and the chart reviewers under the standards of the Treating Physician Rule. No mention is made of Dr. Funsch's obvious superior knowledge and insight from treating Plaintiff dozens of times over many years and his status as a highly trained and credentialed specialist. The specific opinions of the chart reviewers are not set forth in the ALJ's decision and their names, training, or expertise are not mentioned.

Second, the ALJ failed to identify or discuss the essential issue–the frequency in which Plaintiff's psychiatric symptoms would be expected to be exacerbated by the stresses of her employment and other life stressors so that she could not maintain the level of concentration or

record of attendance necessary to sustain work. Dr. Funsch opines that Plaintiff's treatment record demonstrates that these exacerbations would be frequent, rendering Plaintiff incapable of sustaining full time work. Tr. 354, 422. Numerous episodes of withdrawal, crying, and staying in bed all day documented in the record lend support for Dr. Funsch's opinions. Tr. 241, 322, 328-29, 368-69, 372. The vocational expert testified that lapses in concentration of an hour or two in a workday or absences greater than two days per month would render Plaintiff disabled. Tr. 52, 53. The chart reviewers acknowledge "sporadic" exacerbations of symptoms would be expected but do not define what that means or the basis of their opinions in the record. Tr. 347, 375. Since the ability to sustain work in the face of episodic limitations must be addressed in any mental impairment evaluation, reversal and remand are necessary to allow the fact finder to make actual findings on the frequency and extent of anticipated exacerbations of psychiatric symptoms and the impact of such exacerbations on Plaintiff's ability to sustain full time work.

Third, the letters from Dr. Funsch and Ms. McNeill submitted for the first time to the Appeals Council address in considerable detail the issue of the ability of Plaintiff to consistently maintain stable emotional functioning in the face of anticipated employment stresses. Tr. 417-20, 422. The Court finds that both letters contain new and material information on this critical issue. As the Fourth Circuit noted in *Meyer v. Astrue*, the newly presented evidence to the Appeals Council is made part of the case record but no fact finder has weighed the new evidence or attempted to reconcile the newly produced evidence with conflicting and supporting evidence in the record. 662 F.3d at 707. Since this is not a situation where the evidence is "one-sided," remand is necessary for the fact finder to weigh this new evidence and reconcile it with the competing evidence in the record. *Id.* The *Meyer* court noted that "[a]ssessing the probative

value of competing evidence is quintessentially the role of the fact finder" and "[w]e cannot undertake it in the first instance." *Id.*

## Conclusion

Based upon the foregoing, the Court hereby **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further proceedings consistent with this opinion pursuant to Sentence Four of 42 U.S.C. § 405(g).[1]

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

June 27, 2014
Charleston, South Carolina

---

[1] Plaintiff urges the Court to reverse the decision of the Commissioner and to remand with instructions to award benefits. While this remedy is appropriate in a limited set of circumstances, particularly where the case is old, has been through the appeal process previously, and/or the record clearly establishes the claimant's entitlement to benefits, remand to the agency for further action is appropriate where the reversal is necessary because the ALJ failed to address a critical issue in the decision below. *Radford*, 734 F.3d at 295. Here, the ALJ did not address the issue of the frequency and extent of the anticipated exacerbations of Plaintiff's psychiatric symptoms, and remand is necessary to allow the fact finder to assess the evidence on this issue and weigh the opinions of the treating providers and other expert opinions under proper legal standards. Therefore, while the Plaintiff's argument has some force on this record, the Court concludes that the better course is to remand for further action by the Commissioner.